# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CLARENCE DELANY, JR.,

                              Plaintiff,

     v.                                                 1:18-CV-1259 (LEK/ATB)

CITY OF ALBANY, et al.,

                              Defendants.

CLARENCE DELANY, JR., Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by pro se plaintiff Clarence Delaney, Jr.. (Complaint ("Compl.") (Dkt. No. 1). Plaintiff has also filed a renewed application to proceed in forma pauperis ("IFP").[1] (Dkt. No. 4).

## I.    IFP Application

A review of plaintiff's renewed IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 4). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious;

---

[1] Plaintiff's original IFP application was incomplete, and as a result, this action was administratively closed until plaintiff resubmitted his IFP on Nov. 5, 2018. (Dkt. Nos. 2-4). The case has been reopened and is now before me for initial order. (Dkt. No. 6).

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Rule 8(a) of the Federal Rules of Civil Procedure requires the complaint to include a "short and plain statement of the claim showing that the pleader

is entitled to relief." *Whitfield v. Lopez*, No. 15-CV-4827, 2015 WL 6128866, at *3 (E.D.N.Y. Oct. 16, 2015) (citing inter alia Fed. R. Civ. P. 8(a)(2)). The purpose of Rule 8 is to give fair notice of the claim being asserted so as to permit the adverse part the opportunity to file an answer and prepare a defense. *Hudson v. Artuz*, No. 98 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. **Complaint**

Plaintiff alleges that, beginning in May of 2016, he began receiving telephone calls from defendant Albany Police Detective DiGiuseppe. (Complaint ("Compl.") ¶ 6 at 4). Plaintiff claims that defendant DiGiuseppe told plaintiff that he was investigating a "minor crime" that was "no big deal," and defendant DiGiuseppe needed to meet with plaintiff "at some point (ASAP) for questioning." (*Id.*) Plaintiff asked defendant DiGiuseppe about the "nature" of the investigation and whether it "involved the plaintiff." (*Id.*) Defendant DiGiuseppe would not discuss the nature of the investigation over the telephone, but reiterated that it was "not a big deal." (*Id.*)

Plaintiff states that defendant DiGiuseppe called him several more times, until in July of 2016, plaintiff "agreed to meet" with defendant DiGiuseppe at the Veterans' Affairs Medical Center" ("VAMC") in Leeds, Massachusetts. Plaintiff was living in Massachusetts at the time and working as a driver for a "non-profit organization." (Compl. at 5).[2] Defendant DiGiuseppe and a John Doe Detective drove from Albany to

---

[2] Plaintiff has used a form-Section 1983 complaint, but has attached separate handwritten pages to the form. Plaintiff has two pages that he has simply entitled "Continued from page 4." This court

3

Massachusetts to meet with plaintiff at the VAMC. (*Id.*) Plaintiff was sitting on a bench outside the building. Plaintiff states that, when he stood up to meet the defendants, "suddenly," he was told to put his hands on top of his head and searched before the defendants told him to get in the back seat of the Albany Police Car. (Compl. at 5-6). Plaintiff states that this conduct shows that the City of Albany "failed to train its employees." (*Id.*)

Plaintiff states that he was "ordered" to get in the back seat of the car, where he sat next to defendant Detective Doe. (Compl. at 6). Plaintiff states that he was "interrogated" about a credit/debit card that was used in a "Stewarts" in the City of Albany to charge $48.00. (*Id.*) Plaintiff states that as the questioning continued he began to feel that he was being "illegally detained," and that his "constitutional rights" were being violated, so he asked for an attorney. When the defendants refused plaintiff's request, he refused to answer any more questions and "began to exercise his right[] to remain silent." (*Id.*) Plaintiff states that he was then "released" from the car, and defendant DiGiuseppe "threatened" that "they would be back at some point." (*Id.*) The last sentence of plaintiff's complaint states that on August 12, 2017, the plaintiff had a "date in Drug Court in Albany . . . ." (*Id.*) There are no further "facts."

Plaintiff has three causes of action listed. (Compl. ¶ 7 at 7). The first cause of action alleges "Excessive Force" when the defendants "forced" plaintiff into the back seat of their car "without probable cause, violating his State and Federal Constitutional Rights." (*Id.*) The second cause of action alleges "False Arrest and/or Imprisonment"

---

will cite to the pages of the complaint as assigned by the court's electronic filing system ("CM/ECF").

4

when defendant DiGiuseppe "falsely arrested" plaintiff and caused plaintiff to "get kicked out/discharged from the Drug Court Diversion Program," resulting in a "2104 Sentence." (*Id.*) Plaintiff states that the charges of Possession of Stolen Property and Identity Theft were never "pursued and [were] dropped." (*Id.*) The third cause of action alleges "Intentional Infliction of Emotional Distress" ("IIED"), because plaintiff had to seek mental health treatment as a result of the defendants' action. (*Id.*) Finally, plaintiff's fourth cause of action alleges "Official Misconduct" by defendants DiGiuseppe and Doe. (*Id.*) Plaintiff states that the defendants' committed a "crime and clearly violated plaintiff's constitutional rights . . . ." (*Id.*) The City of Albany failed to train its officers/employees. (*Id.*)

Plaintiff seeks substantial monetary relief and states that the defendants are being sued in their individual and official capacities. (Compl. ¶ 8 at 8).

## III. <u>Excessive Force</u>

### A. Legal Standards

There are various sources of excessive force claims in the constitution. *Edrei v. Maguire*, 892 F.3d 525, 533-34 (2d Cir. 2018). Those who are incarcerated for a criminal conviction, draw upon the Eighth Amendment ban on cruel and unusual punishment, while those individuals who are pretrial detainees or non-incarcerated persons rely upon the constitutional guarantee of due process. *Id.* at 533 (citing U.S. Const. amends. V, VII, XIV). Plaintiff in this case falls into the "non-incarcerated" category, and therefore, his claim of excessive force would be brought under the due process clause. In order for force to be excessive under the due process clause, a

5

plaintiff must show that the force that was used purposefully or knowingly against him was "objectively unreasonable." *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473 (2015).

The court in *Edrei* explained that excessive force claims involve "'two separate state-of-mind questions," the first, concerns the official's state of mind with respect to his or her physical acts, and the second, concerns the officer's state of mind with respect to whether his use of force was excessive. 892 F.3d at 534 (citing *Kingsley*, 136 S. Ct. at 2470-73). Unlike the Eighth Amendment standard, the Fourteenth Amendment standard involves only "objective" factors. These factors include six non-exhaustive considerations, including the relationship between the need for the use of force and the amount of force used, the extent of plaintiff's injury, any effort made by the officer(s) to temper or limit the amount of force used, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id.* (citing *Kingsley*, 136 S. Ct. at 2473).

**B.     Application**

A review of plaintiff's complaint show that he fails to state any claim of excessive force. Plaintiff states that he agreed to meet with the officers. Plaintiff then states that when the officers met him in Massachusetts, they instructed him to put his hands on his head and searched him before they asked him to sit in the back seat of the police car for questioning. Plaintiff consented to the encounter, he does not allege that any force was used and he was not injured. Searching plaintiff prior to placing him in the car so that the officers could speak with him was a reasonable security measure.

The officers drove from Albany and met plaintiff who was sitting outdoors on a bench. The had no way of knowing whether he was armed, and it would have been reckless of them to put sit with the plaintiff in a the confined space of a police car without making sure that plaintiff was unarmed.

In plaintiff's first cause of action, he states that defendants "forced" him into the back seat of the car, but plaintiff's statement of facts indicates that he was "ordered" to get into the back seat, where he sat next to defendant Officer Doe while the officers were asking plaintiff questions. There was no "physical" force involved in plaintiff's account of the incident. When plaintiff refused to answer any further questions, the officers let him out of the car and told him that they would be back at "some" time. Although plaintiff states that this comment was "threatening," this statement is hardly a threat. *Cf. Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263, 296-97 (S.D.N.Y. 2015) (discussing cases in which verbal threats of **harm**, combined with the brandishing weapons could be unreasonable) (citing *Kerman v. City of New York*, 261 F.3d 229, 233, 239–40 (2d Cir.2001)). In any event, even if the court were to find that the statement allegedly made by the officers was a "verbal threat," it hardly meets the above requirements for "excessive force." Thus, plaintiff's first cause of action may be dismissed.

## IV. <u>False Arrest</u>

### A. Legal Standards

In analyzing § 1983 claims for unconstitutional false arrest, the court looks to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d

7

Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)). Under New York law, a false arrest claim requires a plaintiff to show that "the defendant intentionally confined him without his consent and without justification." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)).

B.  **Application**

Plaintiff's second cause of action asserts that the defendant DiGiuseppe falsely arrested plaintiff and caused him to be discharged from the Drug Court Diversion Program. The court notes that plaintiff clearly states that he consented to speak with the officers, and the officers drove from Albany to Massachusetts to speak with plaintiff after agreeing to do so by telephone. The fact that he consented to the interview is fatal to his "false arrest/imprisonment" claim. The fact that the officers asked plaintiff to speak to them in their car does not save plaintiff's cause of action. Plaintiff claims that they "forced" him to get in the car, but let him out when he refused to answer any more questions. In addition, plaintiff himself provides the "justification" for the encounter. Defendant DiGiuseppe asked to speak with plaintiff in connection with his investigation of the illegal use of a credit card and identity theft.

It is also unclear from the complaint, how the defendants' actions caused plaintiff to be discharged from his Drug Court Diversion Program. Plaintiff describes the incident with the two officers, and then states only that he had a "date" in Albany for Drug Court. There is no further explanation and no description of how or why he was discharged from the program. Plaintiff has stated no connection between the

8

defendants' alleged actions in Massachusettes and his Drug Court appearance in Albany. Plaintiff states that no charges relating to the credit card and identity theft were ever pursued against him. Thus, plaintiff's second cause of action does not state a constitutional claim and must be dismissed.

## V. IIED

### A. Legal Standards

"Under New York law, IIED has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Thomas v. City of New York,* No. No. 17-CV-6079, 2018 WL 5791965, at *12 (E.D.N.Y. Nov. 5, 2018) (E.D.N.Y. Nov. 5, 2018) (quoting *Restis v. American Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014)).

### B. Application

IIED is a state law cause of action. The federal courts are granted supplemental jurisdiction over state law claims that are so related to the claims that are within the court's original jurisdiction, that they form part of the same case or controversy under the federal Constitution. 28 U.S.C. § 1367(a). If a court dismisses all claims over which it had original jurisdiction, it would have to balance certain factors in deciding whether to exercise its discretion to exercise supplemental jurisdiction. *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

In this case, plaintiff's constitutional claims are meritless, the court should not exercise jurisdiction over his state law causes of action under 28 U.S.C. § 1367

9

(supplemental jurisdiction). In any event, plaintiff's claim fails on the merits on the first prong of the above state law analysis: his allegations are plainly insufficient to demonstrate that the defendants' conduct was "beyond all possible bounds of decency" or so extreme that it can be "regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citation omitted).

Plaintiff agreed to meet with the defendants and answered some questions in the back seat of the police car after being searched for weapons. It is unclear how any of this behavior could be considered "beyond all possible bounds of decency." Thus, plaintiff's third cause of action may be dismissed.

## VI. Official Misconduct

### A. Legal Standards

"Official Misconduct" under New York Law is a crime. N.Y. Penal Law §195.00. An official is guilty of this Class A Misdemeanor when

> with intent to obtain a benefit or deprive another person of a benefit:
>
> 1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or
>
> 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

*Id.*

### B. Application

Plaintiff's fourth cause of action states that the defendants have committed the crime of Official Misconduct, and "clearly" violated plaintiff's constitutional rights.

Plaintiff concludes by stating that the City of Albany failed to properly train its officers. However, there is no private right of action to enforce either state or federal criminal statutes. *Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because there is no private right of action for perjury under New York Law)). Thus, plaintiff may not bring an action to enforce the New York Penal Law against these defendants, and plaintiff's fourth cause of action may be dismissed with prejudice.

## VII. Municipal Liability

### A. Legal Standards

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct. 447, 452 (2010)), (Rep't-Rec.*), adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of

11

constitutional rights; it must be the moving force behind the violation. *Id*.; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

### B. Application

Although plaintiff makes a conclusory statement at the end of his complaint that the City of Albany should be liable for failing to train its employees, there is absolutely no basis for this statement. First, plaintiff has alleged no constitutional violations against the individual defendants, thus, any claims against the City must fail. In any event, plaintiff is describing one incident in which two officers allegedly acted improperly. There is no indication of how different training would have changed the situation or how any policy maker in the City of Albany would have been aware of this incident or these officers. Thus, plaintiff cannot establish municipal liability in this case, and any claims against the City of Albany may be dismissed.

## VIII. Opportunity to Amend

### A. Legal Standards

Generally, before the court dismisses a pro se complaint *sua sponte*, the court

12

should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

   B.   **Application**

After a very careful review of this complaint, this court finds that there is no possible amendment to this complaint that this plaintiff can propose that would state a federal claim against any of the defendants listed. There is no way that the plaintiff can amend these facts to allege that there was any force used at all in this case, thus, there can be no claim of excessive force. Plaintiff claims that he was searched, but there is no indication that the search was performed improperly or roughly, and plaintiff does not raise a claim of illegal search. Plaintiff was not arrested. He consented to speaking with the officers, and by his own statement, when he began refusing to answer questions, the officers let him go, with only a statement that they would be back.

It is also unclear why he believes that the defendant's actions caused him to be discharged from his diversion program. Plaintiff states that no charges were ever ***pursued*** against him, and he does not allege any connection between the questioning in Massachusetts and the discharge from his diversion program in Albany. In any event, even if the defendants' actions somehow "caused" plaintiff's discharge from the program, if defendants did not violate plaintiff's constitutional rights, plaintiff would still fail to state a claim.

13

With respect to the IIED claim, even if plaintiff could bring such a claim without any other federal claims surviving, plaintiff has failed to state any facts which would even approach the elements of an IIED claim.³ Finally, as stated above, plaintiff may not bring a private cause of action for the violation of a New York State Criminal Law under any circumstances. There is no amendment that will save plaintiff's claims in federal court.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's renewed application to proceed IFP (Dkt. No. 4) is **GRANTED** for purposes of filing only, and it is

**RECOMMENDED**, that all plaintiff's claims **except the IIED claim**, be **DISMISSED WITH PREJUDICE AS AGAINST ALL DEFENDANTS,** and it is

**RECOMMENDED**, that plaintiff's **STATE LAW IIED CLAIM**, be **DISMISSED WITHOUT PREJUDICE TO PLAINTIFF BRINGING A PROPER ACTION IN STATE COURT.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

---

³ Although the court has serious doubts about the viability of an IIED claim, when the court declines to exercise supplemental jurisdiction over state law claims, they must be dismissed without prejudice to refiling in state court. *See Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) (dismissal for lack of subject matter jurisdiction must be without prejudice); *Toulouse v. Village Diagnostic Treatment Ctr.*, No. 15-CV-9387, 2018 WL 4682782, at *5 (S.D.N.Y. Sept. 28, 2018).

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 13, 2018

                                                *[signature]*
                                                Hon. Andrew T. Baxter
                                                U.S. Magistrate Judge