UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CLARENCE DELANEY, Jr.,

                Plaintiff,

    -against-                            1:18-CV-1259 (LEK/ATB)

CITY OF ALBANY, *et al.*,

                Defendants.

_____

**DECISION AND ORDER**

## I.    INTRODUCTION

This matter comes before the Court following a Report-Recommendation filed on

November 13, 2018, by the Honorable Andrew T. Baxter, U.S. Magistrate Judge, pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 7 ("Report-Recommendation").

## II.    BACKGROUND

Beginning in May 2016, plaintiff Clarence Delaney, Jr. received a number of phone calls

from defendant Detective DiGiuseppe of the Albany Police Department, asking to meet with

Plaintiff for "questioning" about an investigation into a "minor crime 'that was no big deal.'"

Dkt. No. 1 ("Complaint") at 4. DiGiuseppe declined to discuss details of the investigation over

the phone. Id. Plaintiff eventually, in July 2016, "agreed to meet with Detective DiGiuseppe" at

the Veterans Affairs ("VA") Center in Massachusetts, where Plaintiff lived and volunteered. Id.

at 5.

Plaintiff was waiting on a bench outside the VA Center when DiGiuseppe and another,

unknown detective, John Doe, arrived for the meeting. Id. Plaintiff "was told to put his hands on

top of his head and [was] then searched by the two [detectives]." Id. Then, Plaintiff was "ordered

to get in the unmark[ed] police car of Detective DiGiuseppe." Id. at 6. Plaintiff was in the back seat, next to Doe. Id. DiGiuseppe then "interrogated" Plaintiff about a credit/debit card that was used in a $48 purchase at a Stewart's convenience store in Albany. Id. Plaintiff told DiGiuseppe that "he would like a lawyer present," id., but DiGiuseppe "refuse[d] to let [Plaintiff] out of the vehicle" and "continued to question" him. Id. Plaintiff "refused to answer and began to exercise his right to remain silent." Id. Plaintiff was finally released out of the car, and the detectives advised him that they would be "back at some point." Id. However, charges related to this credit/debit card were "never pursued." Id. at 7.

In this 42 U.S.C. § 1983 civil rights action, pro se Plaintiff has brought claims against DiGiuseppe and Doe for excessive force, false arrest, false imprisonment, unreasonable search, intentional infliction of emotional distress ("IIED"), and official misconduct. Id. at 7. He has also brought a claim against the City of Albany for failure to train its officers. Id. The Magistrate Judge recommends dismissing the entire Complaint, with prejudice, primarily on the basis that Plaintiff consented to the police encounter. R. & R. at 6, 8, 10, 13.

## III.    LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b). However, if no objections are made, a district court need review the report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y.

2

Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

## IV. DISCUSSION

No objections were filed in the allotted time period. Docket. Accordingly, the Court has reviewed the Report-Recommendation for clear error. The Court has found clear error in the Magistrate Judge's assessment of Plaintiff's claims for false arrest/imprisonment, unreasonable search, and IIED, as well as his recommendation to dismiss Plaintiff's other claims with, as opposed to without, prejudice. The Court adopts the Report-Recommendation except with regard to those issues. Plaintiff's false arrest, false imprisonment, and unreasonable search claims survive against detectives DiGiuseppe and Doe. All of Plaintiff's other claims are dismissed without prejudice.

### A. False Arrest and Imprisonment

Plaintiff asserts false arrest and false imprisonment claims against both detectives. Compl. at 6–7.

#### 1. Legal Standard

In New York, the tort of false arrest is synonymous with false imprisonment. Jacques v. Sears, Roebuck & Co., 285 N.E.2d 871, 875 (N.Y. 1972); Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). For ease of reference, the Court will use the term false arrest. A federal claim for false arrest premised on the Fourth Amendment right to be free from unreasonable seizures is "substantially the same" as a false arrest claim under New York law, save for § 1983's

3

requirement that the constitutional tort be under color of state law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest in New York, a plaintiff must show that: (1) the defendants intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not justified or privileged. Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975).

Confinement in this context means "seized." Fincher v. Cty. of Westchester, 979 F. Supp. 989, 999 (S.D.N.Y. 1997). A person is confined, and therefore seized within the meaning of Fourth Amendment "if, in view of all of the circumstances surrounding the [encounter], a reasonable person would have believed that he [or she] was not free to leave." United States v. Lee, 916 F.2d 814, 819 (2d Cir. 1990). The restraint of liberty may be "by means of physical force or show of authority." Bostick, 501 U.S. 429, 434 (1991). The test is an objective one, based on how a reasonable innocent person would view the encounter.

The scope of a Plaintiff's consent, as relevant to the third Broughton prong, depends on "'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). Consensual contact, even without any reason to suspect criminal behavior, does not amount to a "seizure" implicating the Fourth Amendment's protections. Id. To be valid, consent be "a product of that individual's free and unconstrained choice . . . rather than a mere acquiescence in a show of authority." United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993). Once given, consent may be withdrawn, but an intent to withdraw must be made by unequivocal act or statement. United States v. Schaefer, 859 F. Supp. 2d 397, 410 (E.D.N.Y. 2012), aff'd 519 F. App'x 71 (2d Cir. 2013).

As to the fourth Broughton prong—whether the confinement was justified or privileged—a court must assess whether the seizure constituted (1) merely a brief investigative stop, which requires a justification of only reasonable suspicion; or instead (2) an arrest, which requires probable cause. Posr, 944 F.2d at 98.

Although limited in scope, brief investigative stops, or so-called Terry stops, are "seizures," as delineated in Terry v. Ohio, 392 U.S. 1 (1968). U.S. v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992). Terry stop seizures must be based on a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). Reasonable suspicion requires that the officers be aware of "specific articulable facts" that, together with rational inferences from those facts, "reasonably warrant suspicion" that the individual was engaging in, or was about to become engaged in, criminal activity. United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975). The requisite level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." Glover, 957 F.2d at 1009. Whether a set of facts gives rise to a reasonable suspicion depends on the totality of the circumstances, United States v. Arvizu, 534 U.S. 266, 273 (2002), and the analysis is "exceedingly fact-specific," Hernandez v. City of Rochester, 260 F. Supp. 2d 599, 607 (W.D.N.Y. 2003).

The other type of Fourth Amendment seizure, an arrest, must be justified by the higher standard of probable cause. Glover, 957 F.2d at 1008. The Second Circuit has identified the following factors to be considered in determining when a seizure ripens into a de facto arrest:

> [T]he amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such facts as the number of agents

5

involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.

United States v. Vargas, 369 F.3d 98, 101 (2d Cir. 2004).

> *2. Analysis*

The Magistrate Judge dismissed Plaintiff's false arrest claim on the basis of the third prong, finding that Plaintiff "consented" to the encounter with the detectives. R. & R. at 6. The Magistrate erred in so finding. Plaintiff does allege that he "agreed to meet with Detective DiGiuseppe" at the VA Center. Compl. at 5. But the interaction there exceeded the scope of Plaintiff's consent. A reasonable person would not have understood Plaintiff's agreement to meet with detectives in a public place as his consent to be held in a police car despite requests to exit. And even if Plaintiff had initially consented to be in the vehicle, Plaintiff's requests to exit the vehicle would have withdrawn such consent. See Hall v. City of White Plains, 185 F. Supp. 2d 293, 299 (S.D.N.Y. 2002) (finding no consent, but rather an investigative detention, where officers refused plaintiff's request to leave).

Having found that the Magistrate Judge's dismissal was founded in error, the Court must now analyze the remaining three Broughton prongs to fully evaluate his allegations under 28 U.S.C. § 1915. The Court finds that Plaintiff's alleged interaction with the detectives satisfies the first two prongs of a false arrest claim, in that the interaction constituted a confinement, or seizure, of which Plaintiff was aware. Two detectives "ordered" Plaintiff to put his hands on his head and get into the police car. Compl. at 6. He was searched, and was unable to "terminate the encounter," because the detectives "refuse[d]" to let him out of the vehicle. Id. Further, the detectives' behavior—most notably, their ordering Plaintiff into the car and refusing to let him

leave—conveyed a message that compliance with their requests was required. A person in such

circumstances would not have felt "free to leave." See Hall, 185 F. Supp. 2d at 299. Thus, the

detectives "by means of physical force or show of authority . . . restrained the liberty" of

Plaintiff, Bostick, 501 U.S. at 434, such that "a reasonable person would [not have] fe[lt] free to

decline the officers' requests or otherwise terminate the encounter." Id. at 436.

The Court also finds that the fourth false arrest prong is satisfied in Plaintiff's case. At the

least, Plaintiff has alleged an interaction constituting a seizure.[1] Under the fourth false arrest

prong, the detectives needed at least reasonable suspicion to justify the encounter. Sokolow, 490

U.S. at 7. Here, where charges were "never pursued," Compl. at 7, drawing all reasonable

inferences in Plaintiff's favor, and exercising "extreme caution" in ordering sua sponte dismissal,

Anderson v Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), the Court finds that Plaintiff has plausibly

alleged that there was no reasonable suspicion of criminal activity that would have justified the

seizure. See Terry, 392 U.S. at 27 (finding that an officer must be able to articulate more than an

"inchoate and unparticularized suspicion or 'hunch'" of criminal activity).

Accordingly, Plaintiff's false arrest and false imprisonment claims against DiGiuseppe

and Doe survive.

### B. Unreasonable Search

While Plaintiff does not explicitly state a separate cause of action for the detectives'

search of his person, he describes the circumstances of that search. The Court therefore deems

---

[1] Whether the alleged interaction constituted a de facto arrest (requiring probable cause) as opposed to a mere Terry stop seizure is a closer question, which the Court need not decide at this point. The alleged lack of reasonable suspicion makes the interaction unjustified, whether it constituted an arrest or Terry stop.

Plaintiff to have alleged an unreasonable search contrary to the Fourth Amendment's protections. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (instructing that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests).

Whereas a Terry stop is justified by reasonable suspicion that criminal activity may be afoot, a search, or frisk, of a person for weapons requires a reasonable suspicion that a suspect "is armed and presently dangerous to the officer or to others." Terry, 392 U.S. at 24; see also Ybarra v. Illinois, 444 U.S. 85, 93–94 (1979). Even if a stop is justified, an associated frisk is not necessarily justified. United States v. Oates, 560 F.2d 45, 61 (2d Cir. 1977). Where officers have reasonable suspicion that the suspect has committed, or is about to commit, a violent or dangerous crime, the suspicion necessary to justify a stop ordinarily justifies a frisk as well. See Wayne R. Lafave, 4 Search & Seizure § 9.6(a) nn. 55–61 (5th ed. 2014) (collecting cases). But where the suspect is stopped for a non-dangerous offense, the officers need independent, reasonable suspicion to believe that he is armed and presently dangerous. Id. at nn. 63–76 (collecting cases).

The Magistrate Judge did not analyze the search as a separate claim. Instead, he seems to have understood the entire interaction between Plaintiff and the detectives as consensual, obviating the need for any reasonable suspicion. R. & R. at 6, 8, 10, 13. The Magistrate Judge erred in his assessment of consent with regard to the search. Simply by agreeing to meet and speak with detectives in a public place, an individual does not consent to a frisk. See United States v. Floyd, 99-CR-234, 1999 WL 673050, at *5 (SDNY Aug. 30, 1999) (finding frisk non-consensual where officers surrounded friskee, who would not feel free to leave). There is no

8

mention in the Complaint that the detectives asked for consent before frisking Plaintiff; rather, immediately upon the detectives' arrival, they "told" Plaintiff to put his hands on top of his head and then searched him. Compl. at 5.

As the search was nonconsensual, the detectives needed reasonable suspicion that Plaintiff was armed and dangerous. Terry, 392 U.S. at 24. Here, Plaintiff agreed in advance to meet with the detectives in a public place, and the underlying criminal suspicions apparently related to only the non-violent use of someone else's credit card at a convenience store months prior. Those circumstances do not give rise to the reasonable suspicion of weapons and danger required by Terry, meaning that the detectives' frisk violated Plaintiff's Fourth Amendment rights. See United States v. Jackson, No. 15-CR-106, 2015 WL 4557401, at *7 (S.D.N.Y. July 29, 2015) (finding frisk unlawful where stop was justified by suspicion of non-dangerous offense). Accordingly, Plaintiff's unreasonable search claim against Doe and DiGuisseppe survives.

### C. Intentional Inflection of Emotional Distress

The Magistrate Judge recommended dismissal of Plaintiff's state law IIED claim for lack of supplemental jurisdiction, since he had already recommended dismissing all of Plaintiff's federal claims. R. & R. at 9–10. Having found that Plaintiff's Fourth Amendment claims do survive, the Court nevertheless dismisses the IIED claim on different grounds.

The New York Court of Appeals "has cautioned that a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 159 (2d Cir. 2014) (quoting Fischer v. Maloney, 373 N.E.2d 1215, 1217 (N.Y. 1978)); see also Lopez v. City of New York, No.

14–CV–1660, 2014 WL 5090041, at *4 (S.D.N.Y. Oct. 10, 2014) ("New York law considers IIED a theory of recovery that is to be invoked only as a last resort, and requires dismissal of an IIED claim based on conduct that falls within the ambit of other tort liability."

The conduct of which Plaintiff complains falls within the ambit of his claims for false arrest and unreasonable search; accordingly, the Court dismisses the related IIED claim. See Murphy v. City of Rochester, 986 F. Supp. 2d 257, 271 (W.D.N.Y. 2013) (holding that "the allegedly outrageous conduct complained of by [the plaintiff] falls within the scope of the other traditional torts he has pleaded (i.e., false arrest; malicious prosecution; abuse of process; . . . and defamation by libel and slander)"); Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009) (holding that, because "the alleged conduct fits well within the traditional tort theories of false arrest, malicious prosecution, and assault and battery[,] . . . the claim of intentional infliction of emotional distress will not fly").

### D. Detective John Doe

Service of process cannot be effected on Doe until he has been identified by name. Therefore, if Plaintiff wishes to pursue his claim against Doe, he must take reasonable steps to ascertain his identity through discovery. Upon learning the identity of Doe, Plaintiff must amend the Complaint to properly name him. If Plaintiff fails to ascertain the identity of Doe in a timely manner, the claim against him will be dismissed. See Pravda v. City of Albany, 178 F.R.D. 25, 26 (N.D.N.Y. 1998) (dismissing a plaintiff's claims against John Doe and Jane Roe defendants after "Plaintiff ha[d] been given over two years to identify and serve th[o]se individuals, including the full discovery period"); Reed v. Doe, No. 11-CV-250, 2015 WL 902795, at *5 (N.D.N.Y. Mar. 3, 2015) (dismissing a plaintiff's claim against a John Doe defendant after the

plaintiff "failed to . . . take timely measures reasonably calculated to ascertain the [John Doe's] identity").

### E. Dismissal without prejudice

The Magistrate Judge recommended dismissal of all of Plaintiff's claims, save the IIED claim, with prejudice. R. & R. at 12–14. However, "District courts generally should not dismiss a pro se complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Yong Chul Son v. Chu Cha Lee, 559 F. App'x 81, 83 (2d Cir.2014). "Leave to amend is not necessary, however, when it would be futile." Id. (affirming dismissal of a pro se complaint without requiring an opportunity to amend). The Magistrate Judge erred in finding that any amendment to Plaintiff's complaint would be "futile." Accordingly, the Court dismisses without prejudice those claims not revived by this Decision and Order, meaning Plaintiff may restate those claims in an amended complaint, if accepted for filing.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 7) is **APPROVED and ADOPTED, except as to Plaintiff's false arrest, false imprisonment, unreasonable search, and IIED claims**; and it is further

**ORDERED**, that Plaintiff's Fourth Amendment claims for false arrest, false imprisonment, and unreasonable search against Detectives DiGiuseppe and Doe **SURVIVE initial review**; and it is further

**ORDERED**, that all other claims brought by Plaintiff, including all claims brought against the City of Albany, are **DISMISSED without prejudice**;[2] and it is further

**ORDERED**, that the Clerk shall issue a summons and forward it to the U.S. Marshal for service of process upon DiGiuseppe. The Clerk shall forward a copy of the summons and the Complaint by mail to the City of Albany Corporation Counsel, together with a copy of this Decision and Order; and it is further

**ORDERED**, that once Plaintiff identifies Doe, he must amend the operative pleading to properly name him; and it is further

**ORDERED**, that once Plaintiff files an amended pleading identifying Doe by name, the Clerk shall issue a summons and forward it to the U.S. Marshal for service of process upon Doe. The Clerk shall forward a copy of the summons and the amended pleading by mail to the City of Albany Corporation Counsel; and it is further

**ORDERED**, that a response to the Complaint shall be filed by remaining Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on

---

[2] If Plaintiff wishes to pursue any claim dismissed without prejudice, he is advised that, if accepted for filing, any amended complaint will entirely replace the original Complaint.

submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order on Plaintiff, together with a copy of the original Complaint.

**IT IS SO ORDERED.**

DATED:      January 07, 2019
            Albany, New York

Lawrence E. Kahn
U.S. District Judge