UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CLARENCE DELANEY, JR.,**

                **Plaintiff,**

v.                                          1:18-CV-1259 (NAM/ATB)

**ANTHONY DIGIUSEPPE,**
**and DANIEL SEEBER**

                **Defendants.**
_____

**APPEARANCES:**

Clarence Delaney, Jr.
148 E. 48th St., Room 1427
New York, NY 10017
*Plaintiff Pro Se*

The Rehfuss Law Firm, P.C.
Abigail W. Rehfuss, Esq.
Stephen J. Rehfuss, Esq.
40 British American Blvd.
Latham, NY 12110
*Attorneys for Defendants*

**Hon. Norman A. Mordue, Senior District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se* Clarence Delaney, Jr. ("Plaintiff") brings this action under 42 U.S.C. § 1983 alleging claims for false arrest and unreasonable search arising out of an encounter with Defendants DiGiuseppe and Seeber, who are Detectives in the Albany Police Department. (*See* Dkt. Nos. 1, 18, 41). Currently before the Court is the Defendants' motion for summary judgment, (Dkt. No. 84), which Plaintiff has opposed, (Dkt. No. 88). For the reasons that follow, the Defendants' motion is granted.

II.   BACKGROUND

  A. Procedural History

Plaintiff commenced this action on October 25, 2018, asserting at least four claims for alleged violations of his constitutional rights by known and unknown individuals. (Dkt. No. 1). After reviewing pursuant to 28 U.S.C. § 1915, the Court (Kahn, S.J.) dismissed all of Plaintiff's claims except for false arrest/imprisonment and unreasonable search. (Dkt. Nos. 7, 8). Plaintiff then amended the complaint, and the Court (Kahn, S.J.) found that Plaintiff had also raised a claim for malicious prosecution, but the claims for excessive force and intentional infliction of emotional distress remained dismissed. (Dkt. Nos. 18, 20). Plaintiff amended again, identifying Detectives DiGiuseppe and Seeber as Defendants, with the same surviving claims.[1] (Dkt. Nos. 40, 41).

  B. Record Before the Court[2]

On April 16, 2016, the Albany Police Department received a report that a wallet and cell phone were stolen from a vehicle parked outside 456 Madison Avenue. (Dkt. No. 84-10, p. 1). One of the stolen credit cards was used later that evening to buy cigarettes and alcoholic beverages at the Stewart's Shop at 10 New Scotland Avenue. (*Id.*).

Albany police investigators, including Defendants, retrieved a copy of the security camera footage from the Stewart's Shop and identified Plaintiff as the individual making the fraudulent purchase based on their past arrests of Plaintiff and other interactions with him. (*Id.*, ¶¶ 4–6). After identifying Plaintiff as a suspect, Defendants contacted him by phone to arrange an in-person interview, but Plaintiff advised that he was no longer in New York State. (Dkt.

---

[1] The case was reassigned to the undersigned on July 30, 2020. (Dkt. No. 97).

[2] The facts have been drawn from Defendants' statement of material facts, (Dkt. No. 84-2), and Plaintiff's complaints and response papers (Dkt. Nos. 1, 18, 41, 88).

No. 84-2, ¶ 8). Plaintiff eventually agreed to meet with Defendants at the Veteran Affairs Medical Center ("VAMC") in Leeds, Massachusetts. (*Id.*, ¶¶ 10–12; *see also* Dkt. No. 41, p. 4).

On July 23, 2016, Defendants traveled to Leeds, Massachusetts and met with Plaintiff in the parking lot of the VAMC. (Dkt. No. 84-2, ¶ 13; *see also* Dkt. No. 84-10). Defendants performed a "weapons pat down" on Plaintiff before interviewing him inside the patrol car. (Dkt. No. 84-2, ¶¶ 14–15). Defendants advised Plaintiff of his *Miranda* rights and informed him that the interview was being recorded. (*Id.*, ¶¶ 16–17). Defendants then questioned Plaintiff about his involvement in purchasing cigarettes and alcoholic beverages at the Stewart's Shop on the night of April 16, 2016. (Dkt. No. 84-2, ¶ 18; *see also* Dkt. No. 84-10; Dkt. No. 84, Exhibit J). Defendants showed Plaintiff a series of photographs that they suggested showed Plaintiff purchasing the items with a credit card stolen from a vehicle outside 456 Madison Avenue earlier that evening. (Dkt. No. 84, ¶ 18). Plaintiff denied using a stolen credit card and stated that he could not say whether he was the person in the photographs. (Dkt. No. 84, Exhibit J, at 16:00 through 20:00). Defendants then told Plaintiff to exit the vehicle and informed him that they would "do this another way." (Dkt. No. 84, Exhibit J, at 20:10 through 20:31). The interview lasted approximately 20 minutes. (Dkt. No. 84, Exhibit J).

Plaintiff claims that Defendants did not have any cause to search him for weapons prior to the interview on July 23, 2016. (Dkt. No. 41, p. 3). He also alleges that the Defendants ordered him into their vehicle, interrogated him, and held him for 45 minutes. (*Id.*, p. 4). Plaintiff also alleges that he asked to leave and for an attorney, but Defendants refused him. (*Id.*, p. 5). Plaintiff claims that this encounter amounted to a wrongful arrest. (*Id.*, p. 7; *see also* Dkt. No. 88, p. 3).

On August 12, 2016, Plaintiff was arrested and charged in Albany County Court with Criminal Possession of Stolen Property and Identity Theft for his alleged role in using the stolen

credit card on April 16, 2016.  (*See* Dkt. Nos. 84-2, ¶ 26; 84-10; 84-15).  In January 2017, Plaintiff pled guilty to one count of Criminal Possession of Stolen Property in violation of Section 165.45 of the New York Penal Law, in satisfaction of these charges and others from an earlier arrest for grand larceny in August 2015.  (Dkt. No. 84-15; *see also* Dkt. Nos. 84-2, ¶ 28).

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  Further, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences

against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). To that end, "sworn statements are more than mere conclusory allegations subject to disregard [ ]; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." *Id.* at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Further, where a plaintiff proceeds *pro se*, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a *pro se* party's "bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. Fischer*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2011) (citations and internal quotations omitted).

## IV. DISCUSSION

Liberally construed, Plaintiff's Second Amended Complaint alleges that the Defendants subjected him to an unreasonable search and then falsely arrested/imprisoned him for approximately forty-minutes during the July 23, 2016 encounter in Leeds, Massachusetts. (Dkt. No. 41). The Court will address each claim in turn.

### A. False Arrest

Defendants argue that Plaintiff's false arrest claim fails because Plaintiff consented to the interview and they had probable cause to believe that Plaintiff had committed a crime. (Dkt. No. 84-1, pp. 5–9). In response, Plaintiff states that he "never consented to be interviewed/interrogated by the Defendants in the patrol car," and that "Defendants didn't have

5

probable cause to act the way they did or treat the Plaintiff in the way they did." (Dkt. No. 88, p. 3).

### 1. Applicable Law

In general, to prevail on a claim for false arrest, plaintiff must show a seizure under the Fourth Amendment and that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).  Thus, the plaintiff must first show that he was subject to a seizure by a government official, i.e. a custodial situation.  The Second Circuit has explained that "[t]he test for determining custody is an objective inquiry that asks (1) 'whether a reasonable person would have thought he was free to leave the police encounter at issue' and (2) whether 'a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest.'" *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (quoting *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004)).  "Although both elements are required, the second is the 'ultimate inquiry' because a 'free-to-leave inquiry reveals only whether the person questioned was seized.'" *Id.* (quoting *Newton*, 369 F.3d at 672).  In evaluating this second element, courts consider the circumstances of the police encounter, including, *inter alia*, "the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; [and] whether officers told the suspect he was free to leave or under suspicion." *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 661–63 (2004)).

Further, assuming there is a seizure, a defendant sued for false arrest may avoid liability if he had probable cause to arrest or is protected by qualified immunity. *See Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983"). A police officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). In the context of summary judgment, "where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F. 3d 139, 157 (2d Cir. 2007) (citation omitted).

### 2. Arguments

Defendants assert that "Plaintiff's consent to be interviewed by the Defendants defeats his false arrest claim." (Dkt. No. 84-1, pp. 5–7). Specifically, Defendants claim that "when they arrived at the VAMC on July 23, 2016, "the Plaintiff agreed to speak with the Defendants in their vehicle in the parking lot of the facility, and agreed to allow the Defendants to perform a pat down weapons search of him prior to him entering the vehicle." (*Id.*, p. 6). Defendants add that "[e]ven assuming that Plaintiff's consent never existed or was revoked at some point during the interview, his confinement was nevertheless privileged" because Defendants "possessed probable cause, and at a minimum reasonable suspicion, to believe that the Plaintiff committed a crime based on [their] positive identification of the Plaintiff as the perpetrator in the Stewart's surveillance footage as well as Plaintiff's lengthy criminal history involving theft." (*Id.*, pp. 7–8).

7

In response, Plaintiff asserts that he "felt like he was obligated by show of authority by the Defendants when he was told to get into the police patrol car and that he had no other choice." (Dkt. No. 88, p. 3). Plaintiff claims that when he agreed to meet with Defendants, he "expected that they would speak outside, but as soon as the Defendants . . . pulled up in front of the VAMC, they both got out of the car, guns at the waste [sic], in an intimidation [sic] fashion and order me to place my hands on top of my head while they frisked me and pat me down, then ordered me in the car for at least forty-five minutes (45) interrogating me . . . ." (Dkt. No. 41, p. 4). Plaintiff further alleges that he "asked a couple times for a lawyer and to be release[d] out [of] the car, but was ignored until I was finally let out the car and [Defendants] threaten[ed] that 'I will get you.'" (*Id.*, p. 5). Plaintiff claims that he "felt very traumatized by this event," and that Defendants "didn't have any jurisdiction or right and authority to treat or act against the Plaintiff the way they did." (*Id.*).

### 3. Analysis

Plaintiff's false arrest claim hinges on two key issues: (1) whether Plaintiff consented to being interviewed in the patrol car on July 23, 2016; and (2) whether there was probable cause to arrest him at that time.

As to consent, the undisputed facts show that Plaintiff volunteered to meet with Defendants on July 23, 2016. Defendants have provided the Court with an audio recording of the interview that took place inside the patrol car on that day. (*See* Dkt. No. 84-3, Exhibit J). The recorded conversation contrasts sharply with Plaintiff's alleged version of events. Defendants issued Plaintiff *Miranda* warnings and then questioned Plaintiff about his alleged use of a stolen credit card in April 2016. (*Id.*, at 01:05). Defendants then showed Plaintiff a series of photographs that Defendants claimed showed Plaintiff purchasing cigarettes and alcoholic beverages with the stolen card. (*Id.*, at 02:45). Plaintiff denied any involvement in

illegally purchasing the items and told Defendants that he could not tell whether he was the individual in the photographs. (*Id.*, at 04:05 through 09:48). Defendants urged him to acknowledge that he used the stolen card, but Plaintiff told Defendants that he "cannot identify" what is shown in the photographs. (*Id.*, at 09:48 through 13:45). Defendants continued to pressure Plaintiff to acknowledge that it was him in the photographs, but Plaintiff refused to say whether it was him and flatly denied ever stealing or using a stolen credit card. (*Id.*, at 13:45 through 20:00). Defendants then told Plaintiff to exit the vehicle and informed him to "watch what happens next" and that they would "take care of this another route." (*Id.*, at 20:00 through 20:31).

Plaintiff asserts that he "expected that they would speak outside," but when Defendants arrived at the meeting location, Defendants frisked and intimidated him, ordered him to get into the patrol vehicle, and interrogated him for forty-five minutes, and refused his requests for an attorney and to exit the vehicle. (Dkt. No. 41, p. 4). This account is belied by the audio recording in several respects; the recording shows that the interview only lasted 20 minutes and Plaintiff never asked for an attorney and never asked to exit the vehicle. (*See* Dkt. No. 84-3, Exhibit J). Nonetheless, based on the accusatory questioning by the Defendants, which clearly suggested that Plaintiff had stolen the wallet and cellphone, the Court finds that a reasonable person in Plaintiff's position could have concluded that he was under arrest. In other words, even assuming Plaintiff consented to the interview, there is an issue of fact as to whether Defendants exceeded the scope of consent and transformed the situation into a constructive arrest.

Next, the Court turns to the issue of probable cause. The record shows that Defendants were investigating a theft from April 2016 and they had security camera video showing a person who looked like Plaintiff use the stolen credit card to purchase cigarettes and alcoholic

beverages on April 16, 2016. (*See* Dkt. No. 84-13). Defendants were able to identify Plaintiff based on their previous interactions with him in Albany. (*See* Dkt. No. 84-16, ¶¶ 5–7). Although Defendant denied using the stolen credit card, Defendants' investigation matched the number of the stolen credit card to the card used by Plaintiff in the transaction at the Stewart's Shop. (Dkt. No. 84-3, Exhibit J, at 16:28 through 17:30). Taken together, these undisputed facts show that Defendants had sufficiently trustworthy and credible evidence to believe that Defendant had committed the crime of Criminal Possession of Stolen Property in violation of Section 165.45 of the New York Penal Law.

Thus, the Court concludes as a matter of law that Defendants had probable cause to arrest Defendant, and his false arrest claim must be dismissed.[3] *See Gil v. County of Suffolk*, 590 F. Supp. 2d 360, 366–69 (E.D.N.Y. 2008) (dismissing the plaintiff's Section 1983 claim for false arrest where the investigatory detention was privileged by probable cause that plaintiff had committed a crime); *Hernandez v. City of Rochester*, 260 F. Supp. 2d 599, 605–12 (W.D.N.Y. 2003) (same).

### B. Unreasonable Search

Next, Defendants argue that Plaintiff's unreasonable search claim must be dismissed because they had "reasonable suspicion that Plaintiff had committed a crime, render[ing] the weapons pat down search constitutional." (Dkt. No. 84-1, pp. 9–10). In response, Plaintiff contends that he "never consented to the pat down as stated by the defense," and that Defendants "did not have probable cause to act the way they did." (Dkt. No. 88, p. 3).

---

[3] The Court's finding of probable cause is also fatal to any malicious prosecution claim. *See Walston v. City of New York*, 289 F. Supp. 3d 398, 410–11 (E.D.N.Y. 2018) (dismissing a malicious prosecution claim because the defendant had probable cause at the time of the arrest).

1. **Applicable Law**

"Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *Sibron v. New York*, 392 U.S. 40, 64 (1968). Warrantless searches are *per se* unreasonable, unless they fall within one of a limited number of exceptions. *Thompson v. Louisiana*, 469 U.S. 17, 19–20 (1985) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "[T]he Fourth Amendment sanctions a warrantless investigatory stop (temporary detention) and frisk (pat-down for weapons) under two conditions: (1) the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense; and (2) the police officer reasonably suspects that the person stopped is armed and dangerous." *Evans v. Solomon*, 681 F. Supp. 2d 233, 247 (E.D.N.Y. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972).

2. **Arguments**

Defendants assert that their pat-down of Plaintiff prior to the interview was "justified in the interest of officer safety due to the close proximity of the parties in the vehicle and the Plaintiff's lengthy criminal history, which includes unlawful weapons possession." (Dkt. No. 84-1, pp. 9–10). Defendants further contend that "at the time of the pat down search, [they] possessed probable cause and at a minimum reasonable suspicion, to believe that the plaintiff had committed the crime of larceny." (*Id.*, p. 10). In response, Plaintiff disputes Defendants' claim that his criminal history includes grand larceny and robbery. (Dkt. No. 88, p. 1). Plaintiff claims that he "has never been convicted of these charges and furthermore the Plaintiff has no violent crime convictions in his criminal history that would have given them grounds or the

11

excuse to patdown or search [him] . . . ." (*Id.*, p. 2). Plaintiff maintains that he "never consented to the patdown as stated by the defense." (*Id.*).

### 3. Analysis

As relevant here, police officers conducting an investigatory stop may perform an accompanying pat-down search for weapons where there is "a reasonable basis to think 'that the person stopped is armed and dangerous.'" *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)). A reasonable basis "demands 'specific and articulable facts which, taken together with rational inferences from those facts,' [that] provide detaining officers with a 'particularized and objective basis for suspecting wrongdoing[.]" *Id.* (citations omitted). Importantly, a reasonable basis "is less than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity 'may be afoot' and that the person stopped '*may* be armed and presently dangerous.'" *Id.* (citing *Terry*, 392 U.S. at 30)) (emphasis in original). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Notably, the Second Circuit has recognized that "the dangers posed to police officers in situations where a suspect, who may be armed, is placed in the rear of a police car are substantially different and greater than those posed in the typical *Terry* stop" because "the officers are less able to protect themselves from the possibility of violence." *See United States v. McCargo*, 464 F.3d 192, 200–01 (2d Cir. 2006). Thus, "a limited frisk for weapons before placing a suspect in a police car, pursuant to an established policy, reflects an appropriate balancing of the interests at stake." *Id.* at 201.

Here, Plaintiff's unreasonable search claim rests on the allegation that Defendants frisked him without any justification before he got into their vehicle. (*See generally* Dkt. Nos. 41, 88). However, the Court finds that the undisputed facts show that Defendants had reasonable suspicion to believe that Plaintiff might have been armed and dangerous. Among other things, Defendants believed that Plaintiff had a violent criminal history that included charges for weapons possession and resisting arrest. (Dkt. No. 84-2, ¶ 15). Defendants also had probable cause to arrest Plaintiff for Criminal Possession of Stolen Property, as discussed above. And since they intended to interview him in the police vehicle, Defendants were less able to protect themselves from the possibility of violence.

On these facts, the Court concludes as a matter of law that it was reasonable for Defendants to perform a limited frisk for weapons before Plaintiff got into their vehicle. *See McCargo*, 464 F.3d at 200–01; *see also Sanders v. Coughlin*, No. 11-CV-441S, 2017 WL 1196409, at *4–5, 2017 U.S. Dist. LEXIS 49227, at *9–12 (W.D.N.Y. Mar. 31, 2017) (granting summary judgment on the plaintiff's unreasonable search claim where the investigating officers had reasonable suspicion to believe the plaintiff may have been armed and the search "was limited to only that necessary to determine whether Plaintiff posed a threat of harm to himself or others"). Moreover, the search was also reasonable because the Defendants had probable cause to arrest Plaintiff before the interview began, meaning that they could have performed a search incident to arrest. *See Evans*, 681 F. Supp. 2d at 248–51 (dismissing the plaintiff's unreasonable search claim and noting that "a lawful custodial arrest permits a police officer to search the arrestee's person" before a formal arrest if the officer had probable cause at the time of the search). Accordingly, Defendants are entitled to summary judgment on Plaintiff's unreasonable search claim.

13

V. **CONCLUSION**

For these reasons, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 84) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 41) is **DISMISSED** with prejudice; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case and provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date: September 4, 2020
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge